NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DON KARNS, | : | CIVIL ACTION NO. 14-4104 (MLC) |
| Plaintiff, | : | |
| v. | : | |
| KATHLEEN SHANAHAN, et al., | : | |
| Defendants. | : | |
| ROBERT PARKER, | : | CIVIL ACTION NO. 14-4429 (MLC) |
| Plaintiff, | : | |
| v. | : | |
| KATHLEEN SHANAHAN, et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**COOPER, District Judge**

Defendants – New Jersey Transit Corporation ("NJTC"); Sergeant Kathleen Shanahan ("Sergeant Shanahan"), who is an NJTC police officer named in her official capacity and individual capacity; and Officer Sandra McKeon Crowe ("Officer Crowe"), who is an NJTC police officer named in her official capacity and individual capacity – move for summary judgment in their favor under Federal Rule of Civil Procedure

("Rule") 56(a).  (Dkt. 20.)[1]  Plaintiffs, Don Karns ("Karns") and Robert Parker ("Parker"), oppose that motion.  (Dkt. 24; dkt. 25.)  The Court, for the reasons that follow, will grant Defendants' motion for summary judgment.

## BACKGROUND

### I.     FACTUAL BACKGROUND

Members of the public who wish to engage in non-commercial and non-political speech on property owned by NJTC are required to obtain a non-commercial certificate of registration.  (Dkt. 24-1 at 2–3.)  See also N.J.A.C. 16:83-1.4(a) (permitting NJTC to set "limitations on the times, places and manner of non-commercial expression in or on [NJTC property] … to ensure … the orderly and safe flow of people and vehicles …"); N.J.S.A. 27:25-5(e) (permitting NJTC to adopt regulations "which shall have the force and effect of law").  Permits are issued on a "first-come first-serve" basis, and NJTC records all permits issued in a log.  (Dkt. 24-1 at 3.)

Princeton Junction Station is a railroad station that services trains on the northeast corridor, and is owned and operated by NJTC.  (Id. at 13.)  Plaintiffs "are evangelical ministers who regularly preach the Christian gospel."  (Id. at 6.)  Sergeant Shanahan and Officer Crowe (collectively, "the Officers") are employees of NJTC.  (Id. at 12; see also dkt. 1 at 2.)  The Officers patrol Princeton Junction Station.  (Dkt. 24-1 at 12.)

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") under Civil Action No. 14-4104 (MLC) by referring to the docket entry numbers by the designation of "dkt.", unless otherwise indicated.  Pincites reference ECF pagination.  Although filed under Civil Action No. 14-4104 (MLC) alone, the motion for summary judgment also pertains to Civil Action No. 14-4429 (MLC).

Plaintiffs arrived at Princeton Junction Station around 6:00 a.m. on June 26, 2012, and began preaching "loudly" on the narrow train platform. (Id. at 12–14.) The Officers approached Plaintiffs and requested identification. (Id. at 12–14, 17.) Parker produced an expired identification card, and Karns refused to produce identification. (Id. at 17–18.) Plaintiffs told the Officers they did not need a permit to preach at Princeton Junction Station. (Id. at 17.) Parker also attempted to record his discussion with the Officers on his cellular telephone. (Id. at 18.) He later complied with the Officers' request to place the cellular telephone in his pocket. (Id.)

Sergeant Shanahan determined that Parker interfered with the Officers' investigation by failing to produce an identification card and by attempting to record their discussion via cellular telephone. (Id. at 19.) The Officers subsequently arrested Plaintiffs for charges related to "trespass and … obstruction." (Id. at 20.)

Karns was charged under N.J.S.A. 2C:18-3(b), N.J.S.A. 2C:29-1(a), and N.J.S.A. 2C:29-1(b). (Id.)[2] The charge under N.J.S.A. 2C:29-1(b) was later downgraded, and Karns was acquitted of charges under N.J.S.A. 2C:18-3(b) and 2C:29-1(a). (Id. at 21.)

---

[2] N.J.S.A. 2C:18-3(b) describes the criminal violation of "Criminal trespass" as follows:

> Defiant trespasser. A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (1)   Actual communication to the actor; or
> (2)   Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
> (3)   Fencing or other enclosure manifestly designed to exclude intruders.

N.J.S.A. 2C:29-1(a)–(b) describe the criminal violation of "Obstructing administration of law or other governmental function" in relevant part as follows:

3

Parker was charged under N.J.S.A. 2C:18-3(b), N.J.S.A. 2C:29-1(a), and N.J.S.A. 2C:29-1(b). (Id.) The charge under N.J.S.A. 2C:29-1(b) was later downgraded, and Parker was acquitted of the charge under N.J.S.A. 2C:29-1(a). (Id. at 21–22.) Parker was convicted by the West Windsor Township Municipal Court under N.J.S.A. 2C:18-3(b). (Id. at 22; see also dkt. 21-3 at 9–14.) Parker appealed from that conviction to New Jersey Superior Court, and the conviction was reversed on appeal. (Dkt. 20-2 at 48.)

## II.  PROCEDURAL BACKGROUND

Plaintiffs bring their claims under 42 U.S.C. § 1983, asserting violations of their constitutional rights under the First, Fourth, and Fourteenth Amendments. (Dkt. 1; dkt. 6; No. 14-4429, dkt. 1.) Defendants now move for summary judgment. (Dkt. 20.) Plaintiffs oppose the motion. (Dkt. 24; dkt. 25.)

## DISCUSSION

## I.  LEGAL STANDARD AND APPLICABLE LAW

Rule 56 governs motions for summary judgment. See Fed.R.Civ.P. 56(a). Pursuant to Rule 56(a), a federal district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

a. A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act ….

b. An offense under this section is a crime of the fourth degree if the actor obstructs the detection or investigation of a crime or the prosecution of a person for a crime, otherwise it is a disorderly persons offense.

entitled to judgment as a matter of law." Id.  The movant has the initial burden of proving the absence of a genuinely-disputed material fact regarding the claims at issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986).  The nonmoving party, in response, must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citation and quotation omitted). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted).  Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009).

## II.    APPLICATION OF LEGAL STANDARD

### A.    Eleventh Amendment Immunity

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

A federal district court may bar a suit under the Eleventh Amendment even when "a state is not named a party to the action, as long as the state is the real party in interest." Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc).[3] Thus, Eleventh Amendment immunity extends to state departments and agencies that are "arms of the state." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 545 (3d Cir. 2007) (internal citation omitted).

A federal district court, in order to determine whether a state department or agency is an arm of the state, considers the following three factors (collectively, "Fitchik Factors"):

(1) Whether the money that would pay the judgment would come from the state [treasury] …;

(2) The status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

(3) What degree of autonomy the agency has.

Fitchik, 873 F.2d at 659.[4]

A federal district court must weigh the Fitchik Factors equally to conduct "a holistic analysis of the [agency's] relationship with the state …." Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 241 (3d Cir. 2005) (internal citation and quotation omitted);

---

[3] Cert. denied, 493 U.S. 850 (1989).

[4] The Court will reference these factors as the First Fitchik Factor, Second Fitchik Factor, and Third Fitchik Factor, respectively.

see also Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).  Thus, upon reviewing the Fitchik Factors, the district court is mindful that "none of the three factors alone is dispositive."  Benn, 426 F.3d at 239.  Rather, the Fitchik Factors are guideposts to determine whether an agency is an arm of the State, and each factor indicates "the relationship between the State and the entity at issue."  Id. at 240.  The Court addresses the parties' arguments related to Eleventh Amendment immunity and the Fitchik Factors below.

### 1. Defendants' Arguments

Defendants argue that NJTC "is an arm-of-the-state entitled to Eleventh Amendment immunity."  (Dkt. 20-2 at 12.)  Defendants, in support of that argument, point out that the United States Court of Appeals for the Third Circuit ("Third Circuit") previously held that the Second Fitchik Factor and Third Fitchik Factor weigh in favor of granting NJTC Eleventh Amendment immunity.  (Id. at 15.)  With respect to the First Fitchik Factor, Defendants argue that more recent decisions of the United States Supreme Court and the Third Circuit instruct federal district courts to weigh evenly the Fitchik Factors, and therefore the First Fitchik Factor is no longer dispositive.  (Id. at 16.)  Specifically, Defendants cite Benn, 426 F.3d at 239, wherein the Third Circuit held "we can no longer ascribe primacy to the" First Fitchik Factor in the Eleventh Amendment immunity analysis.  (Id. at 13, 16–17.)

Referring to the uniform balancing of the Fitchik Factors, Defendants argue that each factor weighs in their favor.  (Id. at 18–32.)  Defendants also assert that the Officers

7

– as NJTC employees – are entitled to Eleventh Amendment immunity for actions taken in an official capacity.  (Id. at 18–32.)  The Court summarizes those arguments below.

### a. State Treasury: First Fitchik Factor

Defendants concede that the Third Circuit in Fitchik held that the First Fitchik Factor – which primarily concerns "whether the monies to pay a judgment would come from the state treasury" – weighed against granting NJTC Eleventh Amendment immunity.  (Id. at 25–26.)  However, Defendants contend that "subsequent Supreme Court jurisprudence has altered the analysis such that [NJTC's] unique [legislative] history and structure militates in favor of a finding that [the First Fitchik Factor] now supports immunity."  (Id. at 26.)  Defendants, in support of that contention, argue that NJTC "serves an essential state function, and has a unique historical context which confirms its role as the State of New Jersey's primary mass transportation provider." (Id.)

Defendants link the "practical implications of a judgment against" NJTC to "the historical [and legislative] context in which [NJTC] was created."  (Id. at 27.)  According to Defendants, the New Jersey legislature created the NJTC under the Public Transportation Act of 1979 to ensure "that its citizens would be guaranteed reliable [State subsidized] public transportation."  (Id. at 28–31.)  Defendants also argue that the New Jersey "legislature continues to this day to appropriate substantial funds … annually so as to help cover [NJTC's] substantial operating deficit, which has exceeded $1.4 billion for the years from 2008 to 2014."  (Id. at 28–29.)  With respect to Eleventh Amendment immunity, Defendants argue that "the State of New Jersey is critical in [NJTC's] ability

8

to meet its operating shortfall, as was anticipated by the legislature from the beginning, and this factor should weigh in favor" of granting NJTC Eleventh Amendment immunity under the First Fitchik Factor.  (Id. at 29.)

### b. Status of the Agency: Second Fitchik Factor

Defendants argue that NJTC is a New Jersey State agency under New Jersey law and therefore "is an instrumentality of the State exercising essential governmental functions."  (Id. at 18–22.)  For example, Defendants argue that NJTC is established within the New Jersey Department of Transportation ("NJDOT") pursuant to the New Jersey Constitution.  (Id. at 19–20.)  Defendants further explain that the NJDOT "is a principal department within the executive branch of the State of New Jersey, under the supervision of the governor."  (Id. at 20.)[5]

Defendants also argue that the Second Fitchik Factor weighs in their favor, on the ground that: (1) "New Jersey state law treats [NJTC] as a state agency"; (2) NJTC "is considered to be the property of the State for tax purposes and is exempt from all state taxation"; and (3) NJTC "is statutorily authorized to adjudicate contested cases and render final agency decisions …."  (Id. at 20–21.)  Finally, Defendants also point out that NJTC has the power of eminent domain, which Defendants construe as a "hallmark of state sovereignty[.]"  (Id. at 21 (internal citation omitted).)

---

[5] All references to "the governor" in this memorandum opinion are to the New Jersey State governor.

### c.     Degree of Autonomy: Third <u>Fitchik</u> Factor

Defendants argue that NJTC exercises minimal autonomy from the State of New Jersey, and that fact also weighs in favor of granting Eleventh Amendment immunity under the Third <u>Fitchik</u> Factor. (Id. at 22.) Defendants, in support of that argument, contend that NJTC "lacks independence from the state because the governor appoints the entire governing board." (Id. at 23.) Defendants further explain that the seven-member NJTC board is composed of the New Jersey Commissioner of Transportation, the New Jersey State Treasurer, a member of the executive branch selected by the governor, and four public members appointed by the governor with the consent of the New Jersey Senate. (Id.)[6]

Defendants also note that "the Board is subject to operational constraints and has responsibilities to the state." (Id. at 24.) For example, the Board proposes its annual budget to the governor and New Jersey legislature. (Id.) Defendants also point out that NJTC is subject to New Jersey State auditing. (Id.)

### 2.     Plaintiffs' Arguments

Plaintiffs argue that the Third Circuit decision in <u>Fitchik</u> "is binding and requires rejection of the Defendants' [Eleventh Amendment] immunity defense." (Dkt. 25 at 8.) Plaintiffs also contend that the doctrine of nonmutual collateral estoppel precludes Defendants from revisiting the issue of whether Eleventh Amendment immunity extends

---

[6] The governor also appoints an eighth, non-voting member to the NJTC board, at the recommendation of "the labor organization representing the plurality of [NJTC] employees." (Dkt. 20-2 at 23 n.2.)

to NJTC. (Id. at 8–10.) Moreover, Plaintiffs submit that "the Benn decision neither purported to overrule the decision in Fitchik that [NJTC] is not similarly protected" and therefore did not overrule the Third Circuit's decision in Fitchik. (Id. at 9–11.)

### 3. Analysis

The Court finds that the doctrine of nonmutual collateral estoppel does not bar Defendants' motion for summary judgment. See GEOD Corp. v. N.J. Transit Corp., 678 F.Supp.2d 276, 287–88 (D.N.J. 2009) (determining that NJTC is an arm of the State of New Jersey when applying the Fitchik Factors co-equally). Accordingly, the Court will consider the Fitchik Factors below, and apply each factor co-equally to determine whether NJTC is an arm of the State of New Jersey. Benn, 426 F.3d at 239–40.

#### a. Funding: First Fitchik Factor

Defendants concede that the State of New Jersey has "nominally disclaimed liability" for NJTC because "the practical consequences of every adverse judgment in federal court contribute to [NJTC's] operating deficit …." (Dkt. 20-2 at 30.) The Court is not persuaded that the legislative history of NJTC, discussed supra DISCUSSION, Section II.A.1.a, outweighs the central consideration of the First Fitchik Factor concerning whether the judgment would come directly from the New Jersey State treasury. Accordingly, the Court finds that the First Fitchik Factor weighs against granting Eleventh Amendment immunity to NJTC. Fitchik, 873 F.2d at 659–62.

#### b. Status under State Law: Second Fitchik Factor

Defendants cite, as discussed supra DISCUSSION, Section II.A.1.b, to several bodies of New Jersey law, which indicate that NJTC is an arm of the State. Plaintiffs

11

provide no arguments to the contrary. (See generally dkt. 25.) Accordingly, the Court finds that the Second Fitchik Factor weighs in favor of granting NJTC Eleventh Amendment immunity. GEOD Corp., 678 F.Supp.2d at 287–88.

### c. Autonomy: Third Fitchik Factor

Defendants provide sufficient evidence to persuade the Court that NJTC lacks independence from the State of New Jersey. As discussed supra DISCUSSION, Section II.A.1.c, the governor appoints the entire NJTC board and has veto power over board decisions. Accordingly, the Court finds sufficient evidence to demonstrate that the Third Fitchik Factor weighs in favor of granting NJTC Eleventh Amendment immunity. GEOD Corp., 678 F.Supp.2d at 287–88.

### d. Balancing the Fitchik Factors

The Court finds, after reviewing the evidence and weighing the Fitchik Factors, that both the Second Fitchik Factor and Third Fitchik Factor weigh in favor of granting NJTC Eleventh Amendment immunity. Cooper v. SEPTA, 548 F.3d 296, 310–11 (3d Cir. 2008). Accordingly, the Court will grant summary judgment in favor of NJTC and in favor of each Officer in her official capacity. Accord GEOD Corp., 678 F. Supp.2d at 287–88. The Court notes that its analysis here is in accord with other recent case law. See Joseph v. N.J. Transit Rail Operations, Inc., No. 12-1600, 2013 WL 5676690, at *14 (D.N.J. Oct. 17, 2013), aff'd on other grounds, 586 Fed.Appx. 890 (3d Cir. 2014);[7]

---

[7] This particular issue was abandoned on appeal. See 3d Cir. No. 13-4430, 4-3-14 App. Br. at ECF 34.

Mancini v. N.J. Transit Corp., No. 12-5753, 2013 WL 2460342, at *2 (D.N.J. June 5, 2013).

Eleventh Amendment immunity does not apply, however, to the Officers in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 31 (1991).

### B.     Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted).  Qualified immunity grants immunity from suit, and applies even when a government official committed an error based upon "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal citation and quotation omitted).  A federal district court, in order to determine whether qualified immunity applies, must decide whether: (1) "the facts … alleged … or shown … make out a violation of a constitutional right"; and (2) "the right at issue was clearly established at the time of defendant's alleged misconduct."  Id. at 232 (internal citation and quotation omitted).

Qualified immunity is an affirmative defense.  Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014).  Accordingly, a defendant bears the burden of establishing entitlement to a qualified immunity defense on a motion for summary judgment.  Id. With respect to the Fourth Amendment, a police officer "who reasonably but mistakenly concludes that [his] conduct comports with the requirements of the Fourth Amendment [is] entitled to immunity."  Palma v. Atl. Cty., 53 F.Supp.2d 743, 769 (D.N.J. 1999).

13

Courts must analyze the "totality of the circumstances" and adopt a "common sense" approach to the issue of probable cause.  United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984).

### 1. Defendants' Arguments

Defendants argue that the Officers are entitled to qualified immunity because Plaintiffs fail to establish that the Officers committed a constitutional violation.  (Dkt. 20-2 at 41–42.)  Defendants also argue that Plaintiffs' Fourteenth Amendment due process claims are barred.  (Id. at 41 ("To the extent which Plaintiffs' claims are brought under the Fourteenth Amendment pursuant to § 1983, these claims are barred. See Albright, 510 U.S. at 273 ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")).)

As to Plaintiffs' First Amendment claims, Defendants contend that "Plaintiffs did not have an absolute right to preach on the train platform, and their alleged right to record police during an investigatory detention was not clearly established."  (Id. at 42.)  Finally, Defendants contend that Plaintiffs' Fourth Amendment claims fail, because Defendants had ample probable cause to arrest Plaintiffs.  (Id.)

### 2. Plaintiffs' Arguments

Plaintiffs argue that the Officers violated the Fourteenth Amendment by selectively enforcing the permit requirement. (Dkt. 25 at 23.)  Similarly, with respect to the First Amendment claims, Plaintiffs argue that Defendants: (1) "selectively enforced

the [NJTC] permit requirement against religious speech"; and (2) "retaliated against them because they protested the [O]fficers' demands that they cease preaching and attempted to make a video recording of the officers' conduct while questioning and arresting the Plaintiffs." (Id. at 22.)  As to the Fourth Amendment, Plaintiffs argue that the Officers lacked probable cause to support Plaintiffs' arrests.  (Id. at 26–32.)

### 3. Analysis

#### a. Fourteenth Amendment and First Amendment Claims

The Court, having drawn all reasonable inferences in favor of Plaintiffs, finds that Plaintiffs fail to present evidence in rebuttal to Defendants' showing that there was no Fourteenth Amendment violation or First Amendment violation.  Carlisle HMA, Inc., 554 F.3d at 94; Kelly v. Bor. of Carlisle, 622 F.3d 248, 262 (3d Cir. 2010).  The record indicates that the law was unclear as to whether Plaintiffs had an absolute constitutional right to preach on the train platform.  Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 683 (1992).  Thus, the Court finds that the Officers would have no basis to determine that Plaintiffs had an absolute right to preach loudly or record them on the date of the arrest.  Accordingly, the Court finds that each Officer is entitled to qualified immunity in her individual capacity with respect to Plaintiffs' First Amendment and Fourteenth Amendment claims.  Rappa v. Hollins, 991 F.Supp. 367, 374 (D. Del. 1997) ("[T]he qualified immunity issue revolves around whether the alleged act causing the chill[ed First Amendment protection] was clearly established as being unlawful."), aff'd, 178 F.3d 1280 (3d Cir. 1999).

### b. Fourth Amendment Claims

The Court finds that the Officers had an objectively reasonable belief in the existence of probable cause to justify Plaintiffs' arrests. See supra BACKGROUND, Section I. Plaintiffs admit that they were engaging in non-commercial speech without a permit on the date of arrest. Id. Moreover, Plaintiffs interfered with the Officers' investigation by failing to produce a valid identification or permit, and attempting to record their discussion with the Officers via cellular device. Id. Accordingly, the Court finds that the Officers' belief that the Plaintiffs were trespassing in violation of N.J.S.A. 2C:18-3(b) was objectively reasonable, and therefore each Officer is entitled to qualified immunity in her individual capacity on Plaintiffs' Fourth Amendment claims. State v. Moran, 997 A.2d 210, 216 (N.J. 2010).[8]

### CONCLUSION

The Court, for the reasons stated above, will grant Defendants' motion for summary judgment in their favor. The Court will issue an appropriate order and judgment.

  s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** March 31, 2016

---

[8] The Court's analysis in this memorandum opinion is limited to Eleventh Amendment immunity and qualified immunity. Accordingly, the Court need not address other arguments raised by the parties here.